# Bass et al. v. Security Insurance Co. of New Haven et al.

*Meyer E. Maurer,* for plaintiffs.

*Albert L. Bricklin,* for defendants.

JONES, J., November 7, 1951.—This is an action in assumpsit. It is based upon two insurance policies issued to the plaintiffs, one by the Security Insurance Company and the other by the New England Fire Insurance Company. It was tried by the court without a jury under authority of Section 12 of the Act of July 12, 1913, P. L. 711, as amended by the Act of June 20, 1919, P. L. 515, 17 P. S. 695. In such non-jury trial the trial judge functions as a jury and his finding is as the verdict of a jury.

The defendant, Security Insurance Company, issued its policy to the plaintiffs insuring "all contents consisting of furniture, fixtures, machinery, equipment, stock and personal property of every description while contained in" premises 1118 W. Diamond St., Philadelphia, Penna., "and used in connection with or appertaining to the occupancy of a Meats & groceries" in a sum not exceeding $2500. against "direct loss by fire"

during the period from March 28, 1950, to March 28, 1951. The defendant, New England Fire Insurance Company, issued its policy to the plaintiffs insuring similar contents of the same premises in a sum not exceeding $3500. against "direct loss by fire" during the period from July 22, 1949 to July 22, 1950. Both policies were in force upon April 18, 1950, which is the time upon which the plaintiffs averred that a fire occurred in the said premises with consequent damage to and loss of property covered by both policies.

The fact of loss of property covered by the policies and the money value of such loss by reason of the alleged fire were not disputed by the defendants. The defendants denied that the cause of the loss was fire. The issue was restricted to the determination of the meaning of the term, "fire", as used in the contracts of insurance and whether or not under the facts found there was a fire as such term is used in the contracts, thereby making the defendants answerable for the undisputed loss. The Court found for the defendants.

The preponderance of the credible evidence established the facts: that when the firemen arrived upon the premises in response to a call they found the premises, ground floor and cellar, filled with smoke, that in the cellar they found an overheated and smoldering [1] electric motor, that there was no visible light or flame, that one of the firemen turned off the electric current, that bicarbonate of soda was thrown upon the smoldering motor which is the remedy applied in such situation, that no water was used, that the building was ventilated and that the time elapsed from the receipt of the fire call, covering the firemen's movement to the premises, their presence on the premises and their re-

---

[1] Smolder: "To burn and smoke without flame; to waste away by a slow and suppressed combustion; . . ." "Webster's New International Dictionary of the English Language", Second Edition.

turn to the fire-house was a period of twenty-three minutes. Vegetables, fruits and meats were condemned by the health authorities as unfit for human consumption because of smoke.

The turn of the case is the meaning of the term, "fire", as it is used in the contracts of insurance. The contracts were written by the insurer-defendants. They are agreements to indemnify the insured in whole or in part for direct loss caused by fire. Claim having been made by the insured that they be indemnified by the insurers for loss by an alleged fire, the fact of fire and the fact that fire caused the loss alleged must be established.

"Fire" is a common term. It is a rule of reason, primary in the interpretation and construction of written contracts, that the sense in which the terms are used is determined by the intent of the parties. The term, "fire", is not defined in these contracts, hence it is that the commonly understood meaning is the criterion.

What then is the meaning of the term, "fire"? Was there a "fire"; if so, did the plaintiffs suffer a direct loss of insured property by fire?

What was said by the U. S. Circuit Court of Appeals in Western Woolen Mill Co. v. Northern Assur. Co. of London [2] is in point and decisive of the question involved in the instant case. The pertinent portions of the opinion are quoted:

". . . The policies of insurance were contracts between the parties to this litigation, and must be construed as such. In their interpretation we must give to the words employed therein their ordinary popular

---

[2] Western Woolen Mill Co. v. Northern Assur. Co. of London (Circuit Court of Appeals, Eighth Circuit, July 22, 1905), 139 Federal Reporter, 637, 638, 639; Certiorari denied, 199 U. S. 608 (Nov. 27, 1905). See also Security Ins. Co. of N. H., Conn., v. Choctaw C. Oil Co., 299 Pacific Reporter, 882, 883 (April 14, 1931). The court has been referred to no decision of the precise question involved by any Pennsylvania court.

signification, unless it appears the parties intended to use them in a different sense. No such intention appears in this case as to the use of the word 'fire'. . . . ; . . . the plaintiff has not shown any direct loss by fire as that word is used and known to the public generally. Fire is always caused by combustion, but combustion does not always cause fire. The word 'spontaneous' refers to the origin of the combustion. It means the internal development of heat without the action of an external agent. Combustion, or spontaneous combustion, may become so rapid as to produce fire; but, until it does so, combustion cannot be said to be fire. 'Fire' is defined in the Century Dictionary as 'the visible heat or light evolved by the action of a high temperature on certain bodies, which are in consequence styled "inflammable or combustible." ' In Webster's Dictionary 'fire' is defined as 'the evolution of ' light and heat in the combustion of bodies.' No definition of fire can be found that does not include the idea of visible heat or light, and this is also the popular meaning given to the word. The slow decomposition of animal and vegetable matter in the air is caused by combustion. Combustion keeps up the animal heat of the body. It causes the wheat to heat in the bin and in the stack. It causes hay in the stack and in the mow of the barn to heat and decompose. It causes the sound tree of the forest, when thrown to the ground, in the course of years to decay and molder away, until it becomes again a part of mother earth. Still we never speak of these processes as 'fire.' And why? Because the process of oxidation is so slow that it does not, . . . , produce a 'flame or glow.'

" . . . . . . . . . . . . . . . . . . . . . "

In Saul J. Baron Corporation v. Piedmont Fire Ins. Co., et al., 1 New York Supplement, 2d Series, 713, 714 (Dec. 16, 1937), it was said:

"PER CURIAM.

"Plaintiff had the burden of showing its alleged fire damage. The only evidence of the cause of the alleged fire, charring, or burning of electric wiring was that of an overload of electrical current.

"The burning or charring of a wire carrying electric current occurring during or accompanying an overload of current must be regarded as an electrical injury especially when, as here, there is an absence of evidence showing such burning or charring to be a fire as distinguished, if that can be, from electrical injury.

"Judgment reversed, with $30 costs, and judgment directed for defendants, with costs. All concur."

The application of the recited authoritatively declared principles of law to the facts found affirms the finding of the Trial Court. There was no fire as such term is used in the policies and therefore no liability of the insurers arose thereunder.[3]

---

[3] The correct and precise definition of the term, "fire", discloses the invalidity of the generalization, "Where there is smoke, there is fire". Before acceptance a general proposition must be probed, the consequences to which it leads in action must be examined and the meaning of the terms in which it is expressed must be examined in the light of common experience and general usage. See The Socratic Method, Causation. "A History of Philosophy". Frank Thilly, revised by Ledger Wood, Professor of Philosophy, Princeton University (1951).